IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DEBORAH F. MORRIS                                                                  PLAINTIFF

v.                                         No. 5:10-CV-330-DPM

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration                    DEFENDANT

ORDER

**1.**  Deborah F. Morris sought disability benefits, claiming she became disabled in September 2005.  The ALJ determined Morris became disabled in March 2009 on her fiftieth birthday.  Morris appeals, maintaining she was disabled by mental impairments sooner.  The ultimate question is whether substantial evidence supports the ALJ's determination that Morris was not disabled between September 2005 and March 2009.  But Morris attacks only one aspect of the ALJ's decision—his consideration of Dr. Stephen Broughton's opinion.  Ten days before Morris's hearing, Dr. Broughton concluded that Morris would miss work about twice per month. This opinion is important because the vocational expert testified that a person who misses work twice a month cannot sustain a job.  Morris says Dr. Broughton was her treating psychiatrist; the ALJ therefore erred on the law, she continues, by not giving the opinion controlling weight.  *Dolph v. Barnhart*, 308 F.3d 876, 878

(8th Cir. 2002).

**2.** The ALJ did not err. The ALJ must give a treating psychiatrist's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating psychiatrist is someone who provides, or has provided, the claimant with medical treatment or evaluation, and has, or has had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. An ongoing treatment relationship exists when medical evidence shows the claimant sees, or has seen, the psychiatrist "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [her] medical condition(s)." *Ibid*.

Instead of expressly stating the weight given to Dr. Broughton's opinion, the ALJ wrote that it was "not known how long the claimant had been treated by Dr. Broughton." The record, however, shows Dr. Broughton saw Morris only once—on 22 December 2008 for a psychiatric evaluation. Dr. Broughton's opinion identified the psychiatric evaluation as the only time he saw Morris.

That single visit was insufficient to establish an ongoing treatment relationship because the evaluation report shows Dr. Broughton lacked "sufficient knowledge upon which to formulate an opinion as to [Morris's] ability to function in a workplace." *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004).  For example, Morris was Dr. Broughton's only source of information about her medical condition.  Morris reported to Broughton that she had a stroke and a heart attack.  *Ibid*.  Neither report was true.

The inaccuracy undermined Dr. Broughton's opinion because he did not attribute absenteeism solely to mental impairment.  Instead, Dr. Broughton opined that Morris would miss work "primarily" because of her medical conditions.  Dr. Broughton did not confirm Morris's account of her medical history because Morris asked him not to communicate with her primary care physician.  As a result, Dr. Broughton's opinion was based on inaccurate medical history.

In addition, the single visit provided no basis for determining the effectiveness of Morris's treatment plan.  Dr. Broughton prescribed psychotropic drugs and indicated he would see Morris the following month.  But the record contains no evidence of a later visit.  Without follow up, Dr.

Broughton could not assess the effectiveness of prescribed treatment. Dr. Broughton lacked sufficient knowledge upon which to formulate an opinion about Morris's ability to function in a workplace because he lacked an on-going treatment relationship with Morris. And in the absence of that kind of relationship, Dr. Broughton's opinion was not entitled to controlling weight. *Cf. Randolph*, 386 F.3d at 840.

**3.** The ALJ properly considered Dr. Broughton's opinion as one among several about how Morris's mental limitations affected her ability to work between September 2005 and March 2009. Whatever slight weight Dr. Broughton's June 2009 opinion had, the record contains plenty of well-founded medical evidence about the disputed three-and-a-half-year period. For example, in April 2007, Dr. Elliot D. Salk examined Morris. He is an agency psychologist. Dr. Salk reported that during his examination Morris "appeared depressed and anxious as evidenced by tearfulness, crying and occasionally legs shaking," but he observed Morris "in the waiting room smiling and engaging the receptionist in a conversation." Dr. Salk characterized Morris as "guarded and reticent to provide details in support of her claims." *Ibid*. Unlike Dr. Broughton, Dr. Salk included the results of

medically acceptable clinical and laboratory diagnostic techniques. Dr. Salk found Morris's abilities to do work-related activities moderately limited in three of twenty rated areas. Those findings did not preclude Morris from working because Dr. Salk defined "moderate limitation" as "fair/limited but not precluded." *Ibid.* Dr. Salk's opinion is substantial evidence supporting the ALJ's decision because a reasonable mind would accept the opinion as adequate to support the conclusion that Morris was not disabled due to mental impairment between September 2005 and March 2009. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

\* \* \*

The Court affirms the denial of Morris's applications for benefits. So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

<u>10 September 2012</u>